# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

**TYRONE KENNEDY,**
    *Petitioner*,

v.

**JAMES SCHIEBNER, Warden**
    *Respondent*.

Case No.:

Hon.

## PETITION FOR WRIT OF HABEAS CORPUS

CO-COUNSEL FOR PETITIONER:
**DAVIS POLK & WARDWELL LLP**
Daniel Thomson
(NY Bar No. 5643937)
Alexa Jacobson
(NY Bar No. 5754007)
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

CO-COUNSEL FOR PETITIONER:
Anwesha Banerjee
(NY Bar No. 5580956)

COUNSEL OF RECORD FOR PETITIONER:
**MICHIGAN INNOCENCE CLINIC**
University of Michigan Law School
Imran J. Syed (P75415)
galad@umich.edu
Jenna M. Cobb (P88284)
Olivia K. Vigiletti (GA Bar No. 753153)
Charlotte Doran (Student Attorney)
Zainab Dossaji (Student Attorney)
Brinson Elliott (Student Attorney)
Alaa Mustafa (Student Attorney)
Avery Wright (Student Attorney)
701 S. State Street
Ann Arbor, MI 48109
(734) 763-9353

# INTRODUCTION

Petitioner Tyrone Kennedy, through his attorneys from the Michigan Innocence Clinic at the University of Michigan Law School, respectfully submits this Petition for Writ of Habeas Corpus, and states the following:

# PROCEDURAL SUMMARY

1. Mr. Kennedy was convicted on May 5, 1988. Tr. Vol. VI at 2-3. He was sentenced to 60 to 90 years for assault with intent to murder, 30 to 45 years for armed robbery, and 10 to 15 years for breaking and entering. Sentencing Tr. at 8-9. His convictions were affirmed on direct appeal, which ended in 1992.

2. In 2016, Mr. Kennedy filed a motion for DNA testing. While a DNA analysis was ordered, no material DNA profiles were identified, and the weapon (a brick used to bludgeon the victim) could not be tested because it had been lost by the police. DNA Mot. Hearing Tr. 1/11/16 at 5-6, 8-9.

3. Mr. Kennedy filed his first and only state court Motion for Relief from Judgment in August 2020, pursuant to Michigan Court Rule 6.500 *et seq*. This motion raised federal constitutional claims under *Strickland v. Washington* (ineffective assistance of trial and appellate counsel) and *Brady v. Maryland* (State's failure to disclose material impeachment evidence), as well as a state-law claim under *People v. Cress* (new scientific evidence and the confession of alternative suspect).

4. On April 9, 2021, the trial court denied Mr. Kennedy's *Strickland* and *Brady* claims without a hearing but granted an evidentiary hearing on the *Cress* claims. Trial Court 4/9/21 Opinion and Order, Appendix F to Accompanying Memorandum in Support. An evidentiary hearing was held on June 24 and July 27, 2021, where new evidence relevant to all claims was presented.

1

*See* Accompanying Memorandum at p. 11.

5. Following the evidentiary hearing, Mr. Kennedy filed post-conviction briefing in which he sought relief under *Cress*, but he also asked the trial court to reconsider its prior denial of the *Strickland* and *Brady* claims, given the additional record made at the evidentiary hearing. Post-Hearing Brief in Trial Court at 28-29, 30 n.9, Appendix H.

6. The trial court issued a final order denying Mr. Kennedy's Motion for Relief from Judgment on April 4, 2022. Trial Court 4/4/22 Opinion and Final Order, Appendix B. The trial court's post-hearing opinion/order addressed only the state law *Cress* claim—and it did not address the *Strickland* or *Brady* claims—even though Mr. Kennedy had sought reconsideration of the denial of those claims in light of the record made at the evidentiary hearing. *See* Accompanying Memorandum at pp. 21-23.

7. Mr. Kennedy then filed an application for leave to appeal with the Michigan Court of Appeals on September 15, 2022, within six months of the final order, as required by MI Ct. Rule 7.205(A).

8. On September 27, 2022, due to a misunderstanding based on an administrative error, the Court of Appeals issued an administrative order partially dismissing Mr. Kennedy's application as untimely for the *Brady* and *Strickland* claims. MI Court of Appeals 9/27/22 Admin. Order, Appendix I. Mr. Kennedy filed a motion for reconsideration on October 17, 2022, which was denied on November 2, 2022. MI Court of Appeals 11/2/22 Reconsideration Denial, Appendix J. *See* Full Discussion in Accompanying Memorandum at pp. 23-24, 29-33.

9. Mr. Kennedy sought interlocutory leave to appeal this partial dismissal in the Michigan Supreme Court on November 29, 2022, but leave was denied on March 10, 2023. MI Supreme Court 3/10/23 Denial of Interlocutory Leave to Appeal, Appendix K. Michigan Supreme Court Justice Megan Cavanagh concurred in the judgment, but she noted that the Court of Appeals's

denial may have been incorrect and that the relevant court rules were unclear and needed amendment. *Id.*

10. The Court of Appeals later granted Mr. Kennedy's application for leave to appeal on April 4, 2023, and oral argument was held on May 7, 2024. MI Court of Appeals 4/4/23 Order Granting Leave to Appeal, Appendix L.

11. The Court of Appeals affirmed the trial court's judgment in an unpublished opinion on May 23, 2024—holding that the *Brady* and *Strickland* claims were barred by the statute of limitations issue, and denying relief on the *Cress* claims. MI Court of Appeals 5/23/24 Opinion, Appendix A.

12. Mr. Kennedy filed an application for leave to appeal to the Michigan Supreme Court on July 17, 2024, which was denied on October 28, 2024. A motion for reconsideration was also denied on December 26, 2024. MI Supreme Court 10/28/24 Order Denying Leave to Appeal and 12/26/24 Order Denying Reconsideration, Appendix M.

13. While Mr. Kennedy's Leave Application was pending in the Michigan Supreme Court, that Court, in its role overseeing the Michigan Court Rules, released on September 11, 2024, a proposed amendment to MI Court Rules 6.508 and 6.509. *See* MI Supreme Court 9/11/24 Administrative Order for File No. 2022-57, Appendix N. The proposed amendment **(with new language underlined)** was as follows:

    Rule 6.508    Procedure; Evidentiary Hearing; Determination

    (A)-(E) [Unchanged.]

    (F) <u>Reissue Order. If, while considering a motion filed under MCR 6.502, the court initially issues an order deciding the motion in part, within 7 days of entering an order deciding the remaining issue(s), the court must reissue the order so that all decisions on the motion are reflected in a single order.</u>

    Rule 6.509    Appeal

3

(A) Availability of Appeal. Appeals from decisions under this subchapter are by application for leave to appeal to the Court of Appeals pursuant to MCR 7.205(A)(1). The 6-month time limit provided by MCR 7.205(A)(4)(a), runs from the decision under this subchapter. <u>For purposes of this subrule, a "decision under this subchapter" includes a reissued order under MCR 6.508(F).</u> Nothing in this subchapter shall be construed as extending the time to appeal from the original judgment.

(B)-(D) [Unchanged.]

14. After a public comment period of several months and an administrative hearing, the Michigan Supreme Court adopted the proposed rule amendment. MI Supreme Court 3/19/25 Administrative Order for File No. 2022-57, Appendix O. **The new rule makes certain that future Michigan defendants in Mr. Kennedy's position will not face the statute of limitations barrier that the state Court of Appeals imposed upon Mr. Kennedy**, given that trial courts are now required to issue one final judgment addressing all of the claims (even those that were rejected previously in interim orders) at the end of trial court litigation.

15. Mr. Kennedy now files this Petition for Writ of Habeas Corpus, arguing that all general legal standards for federal habeas corpus claims are met and relief is warranted on his underlying federal constitutional claims.

## FACTUAL SUMMARY (TRIAL)

16. On the evening of September 4, 1987, at around 11 p.m., an 81-year-old woman, Elsie Watson, was beaten with a brick in her Albion, MI home and her purse was stolen. Trial Tr. Vol. II at 19-25.

17. Hazel Vandevender, a white woman (Tr. Vol. III 184-85), observed a black man carrying a black purse walking down her street. Trial Tr. Vol. III at 115, 124-28. She claimed to recognize him only when he stopped by a street sign between two large trees at the corner of South Monroe and East Porter Streets to rifle through the purse. *Id.* at 122-41.

4

18. Vandevender was sitting in her screened front porch with her porch lights off, and her interior porch lights also off, making the area dark. *Id.* at 123.

19. Measurements made many years after the trial show that Vandevender's vantage point was **over 73 feet away and the person she viewed was in near total darkness**. *See* Accompanying Memorandum at pp. 11-14.

20. Three weeks after the crime, on September 23, 1987, police placed Mr. Kennedy in a lineup. Mr. Kennedy was the shortest man in the lineup and the only one with chin hair. After "five or ten" minutes of deliberation, Vandevender selected Mr. Kennedy, stating, "**I guess it's number two.**" *See* Accompanying Memorandum at pp. 7-8.

21. Vandevender's description of the suspect was greatly inconsistent. *See* Accompanying Memorandum at pp. 8-9. At trial, she settled on the suspect being anywhere between 5'4" and 5'8". Tr. Vol. III 164, 168 185-86. She claimed to see that the man had a little "chin hair"—although she admitted that it "could have been" a shadow in the darkness. *Id.* at 188.

22. No physical evidence ever linked Mr. Kennedy to the crime, even though many pieces of physical evidence—including blood, fingerprints, hair, and an envelope from the stolen purse— were recovered from the scene. *See, e.g.*, Tr. Vol. II at 35-36, 203-04; Tr. Vol. IV at 2, 154-55, 172; Tr. Vol. V at 16. Mr. Kennedy had spent the evening at the home of friends (Willard and Penny Brown) playing cards and listening to a high school football game. Tr. Vol. V at 28-29, 75.

23. Police had an alternate suspect, Curtis Wilson, who was a black man of almost identical height and weight to Mr. Kennedy. In December 1987, Wilson failed a polygraph test in which he had denied involvement in the crime and implicated Mr. Kennedy. Def. Exhibit 24 (App. C at p. 28). Wilson later gave a written statement implicating himself and Mr. Kennedy, but then recanted before trial, stating he was coerced into lying and that, in fact, he had seen Mr.

Kennedy at the Browns' house that night (confirming Mr. Kennedy's alibi). *See* Accompanying Memorandum at pp. 7-8.

24. At trial, Vandevender confidently identified Mr. Kennedy as he sat at the defense table in an orange jumpsuit, but also stated, **"I didn't even know I picked the right one until the day I came to court."** Tr. Vol. III at 149 (emphasis added).

25. The only other witness linking Mr. Kennedy was Bud Howard, who claimed Mr. Kennedy confessed to him. However, Howard admitted he was drunk during the conversation and when giving his police statement, and that it was "possible" Mr. Kennedy had actually said he had no involvement. The trial prosecutor himself called Howard "**useless as a prosecution witness.**" Def. Exhibit 19 (App. C at p. 21) (emphasis added). Howard fully recanted his statements in 1989 and again in 2014. Affidavit of James Howard, Def. Exhibit 27 (App. C at p. 33-34 ¶¶ 4, 6).

26. Mr. Kennedy's defense at trial included his alibi. Importantly, only **daytime photographs** of the scene were presented to the jury, even though the incident happened at night. Trial counsel did not visit the scene or obtain nighttime photos and did not cross-examine Vandevender on issues of lighting or distance. Appellate counsel also failed in this regard. *See* Accompanying Memorandum at pp. 45-52.

## FACTUAL SUMMARY (NEW EVIDENCE)

27. The Michigan Innocence Clinic presented new evidence in the 2021 evidentiary hearing showing that the **distance from Vandevender's porch to where the suspect stood was over 73 feet, and the area was in near-total darkness**. The nighttime photographs of the unchanged scene of Vandevender's identification show for the first time that it was impossible for Vandevender to identify the suspect, given the distance and lack of lighting. *See*

6

Accompanying Memorandum at pp. 11-14.

28. Further, former Albion deputy police chief Michael Johnson testified that the scene is materially the same today as it was when he began patrolling the area in 1991. If anything, the lighting is now brighter due to new LED bulbs being installed in the streetlights in 2019. *See* Accompanying Memorandum at pp. 14-15.

29. Dr. Margaret Bull Kovera, a leading expert in eyewitness identification, testified that this case presented "**one of the worst set of . . . factors for an identification case**" in her career. EH 6/24/21 at 108 (emphasis added).

30. According to Dr. Kovera, new scientific evidence since Mr. Kennedy's 1987 trial demonstrates Vandevender's identification was unreliable due to many flaws at three stages:

   i. <u>Opportunity to view at the scene:</u> Low illumination, long distance (over 22 meters), limited exposure time, and the cross-racial nature of the identification (Vandevender, a white woman, identifying a Black man) would have fatally impaired Vandevender's ability to accurately encode and remember the culprit's face. Dr. Kovera stated a reliable identification is made at no more than 15 meters and with no fewer than 15 lux of light.

   ii. <u>Identification at lineup:</u> Vandevender's identification of Mr. Kennedy at the live lineup three weeks later was likely to have been unreliable due to unconscious transference, memory loss over a long retention interval, nonblind administration of the lineup, lack of a lineup instruction that the person she saw may not be present, biased lineup composition, and her slow speed of identification. The officers administering the lineup knew Mr. Kennedy was the suspect, and Mr. Kennedy was the only one in the lineup matching the "small" man description and having chin hair. Vandevender was not told the perpetrator might not be in the lineup and her "five or ten minutes" deliberation exceeded the 36-second optimum cut-off for reliable identifications.

   iii. <u>In-Court Identification:</u> Vandevender's subsequent in-court identifications were also undermined by the inherent suggestiveness of in-court identifications, commitment effect, witness overconfidence, and confidence malleability. Mr. Kennedy was easily identifiable sitting at the defense table in prison clothing. Witnesses often confidently overestimate accuracy, and such confidence is convincing to juries.

*See* Full Discussion in Accompanying Memorandum at pp. 16-20.

7

31. Mr. Kennedy also presented new evidence in the form of a previously undisclosed prosecution note documenting a call from Vandevender to the prosecutor's office, which took place in between her two days of testimony at the preliminary examination. Def. Exhibit 11 (App. C at p. 11). The defense was not previously aware of the note or the information it contained. Def. Exhibit 28 (App. C at p. 36 ¶¶ 5-6); Def. Exhibit 30 at (App. C at p. 38-39 ¶ 5). The note describes that Vandevender stated she did not **"want to testify until she clears something up about what she can see from her house"**—contradicting her later assertions of confidence during her trial testimony. Def. Exhibit 11 (App. C at p. 11) (emphasis added).

32. Finally, at the 2021 evidentiary hearing, Rechelle Etchison, Curtis Wilson's former girlfriend, testified that in 2004, **Wilson confessed to her that he committed the crime** and unequivocally stated that Mr. Kennedy had "nothing to do with that." EH 7/27/21 at 19. **Wilson had previously failed a polygraph denying involvement in the crime.** Def. Exhibit 24 (App. C at p. 28).

## FEDERAL HABEAS CLAIMS

33. As detailed in the Memorandum in Support, the claims at issue here were properly exhausted in state court, are not procedurally defaulted, and are within the statute of limitations. *See* Full Discussion in Accompanying Memorandum at pp. 26-44.

    i. Mr. Kennedy clearly did fully exhaust state remedies. As discussed in the Memorandum in Support, Mr. Kennedy presented his *Strickland* and *Brady* claims to the state trial court, Court of Appeals, and Supreme Court. He has completed a full round of Michigan's established appellate review process as required to satisfy the exhaustion requirement. *See* Full Discussion in Accompanying Memorandum at pp. 27-28.

8

    ii. Mr. Kennedy's claims are not procedurally defaulted because they were filed in accordance with Michigan Court Rules and the norms of litigating appeals. The Michigan Court of Appeals incorrectly imposed procedural default based on an unforeseeable and unsupported interpretation of the Michigan Rules and appellate norms. State Court of Appeals 5/23/24 Opinion at 3-5, App. A. **"[A]n unforeseeable and unsupported state-court decision on a question of state procedure does not constitute [procedural default]. Novelty in procedural requirements cannot be permitted to thwart review"** by federal courts. *Cruz v. Arizona*, 598 U.S. 17, 26 (2023) (internal quotations omitted, emphasis added). Even if Mr. Kennedy's claims **were** procedurally defaulted, this Court could still assess the merits of his *Strickland* and *Brady* claims because he can establish cause and prejudice. Furthermore, if the court was to find that the cause requirement is not met, it should still reach the merits of Mr. Kennedy's claims because he can make a gateway showing of actual innocence. *See* Full Discussion in Accompanying Memorandum at pp. 28-43.

    iii. Mr. Kennedy's *Strickland* and *Brady* claims are also well within the one-year statute of limitations for federal habeas claims. *See* Full Discussion in Accompanying Memorandum at pp. 43-44.

34. Moreover, the claims are clearly rooted in federal constitutional rights under the Sixth and Fourteenth Amendments to the U.S. Constitution.

35. The specific claims in this petition (explained and argued more fully in the accompanying Memorandum in Support) are:

- **Ineffective Assistance of Trial and Appellate Counsel under *Strickland v. Washington* (Sixth and Fourteenth Amendments):** Trial counsel's performance was

9

deficient for failing to conduct a reasonable investigation into the scene—specifically failing to visit the scene or obtain nighttime photographs to demonstrate the impossible viewing conditions (over 73 feet in near-total darkness). Appellate counsel was correspondingly deficient for failing to investigate and litigate trial counsel's ineffectiveness on direct appeal. This deficient performance prejudiced Mr. Kennedy by depriving the jury of critical evidence that would have shown Vandevender's identification was unreliable, especially given the prosecution's otherwise weak case and lack of physical evidence. *See* Full Discussion in Accompanying Memorandum at pp. 44-52.

- **Due Process Violation under *Brady v. Maryland* (Fourteenth Amendment):** The State violated Mr. Kennedy's due process rights by failing to disclose a prosecution note reflecting star witness Hazel Vandevender's apparent doubt and uncertainty about "what she can see from her house." This critical impeachment evidence was favorable to the defense, withheld by the State, and was material, because it would have significantly undermined the credibility of the prosecution's star witness and thus created a reasonable probability of a different outcome at trial. *See* Full Discussion in Accompanying Memorandum at pp. 52-55.

## CONCLUSION

For all the reasons stated above and explained more fully in the accompanying Memorandum in Support, Petitioner Tyrone Kennedy requests that the Court grant his Petition for Writ of Habeas Corpus.

| | |
|---|---|
| Respectfully Submitted, | Dated: September 12, 2025 |

**CO-COUNSEL FOR PETITIONER**
**DAVIS POLK & WARDWELL LLP**
*s/Daniel Thomson*
(NY Bar No. 5643937)
*s/Alexa Jacobson*
(NY Bar No. 5754007)

**CO-COUNSEL FOR PETITIONER**
*s/Anwesha Banerjee*
(NY Bar No. 5580956)

**COUNSEL OF RECORD FOR PETITIONER**
**MICHIGAN INNOCENCE CLINIC**
**University of Michigan Law School**
*s/Imran J. Syed* (P75415)
galad@umich.edu
*s/Jenna M. Cobb* (P88584)
*s/Olivia K. Vigiletti* (GA Bar No. 753153)
*s/Charlotte Doran* (Student Attorney)
*s/Zainab Dossaji* (Student Attorney)
*s/Brinson Elliott* (Student Attorney)
*s/Alaa Mustafa* (Student Attorney)
*s/Avery Wright* (Student Attorney)